UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHARLES LAMONT BRITT, : CASE NO. 3:17CV-02159-JCH

Plaintiff,

v.

ELM CITY COMMUNITIES,

Defendants. : NOVEMBER 1, 2018

## MEMORADUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

The Defendant, Elm City Communities, hereby moves for summary judgment with respect to the Plaintiff's Amended Complaint dated August 23, 2018. As will be set forth below, there are no issues of material fact and the Defendant is entitled to summary judgment as a matter of law.

I. **Factual Background**

The Plaintiff's Original Complaint dated December 27, 2017 and his Amended Complaints dated August 23, 2018 and October 16, 2018 allege that the Defendant violated his due process rights in the course of an eviction. The Plaintiff was a tenant residing in a public

1

housing authority unit owned by the Defendant, Elm City Communities. The Plaintiff and Defendant entered into a written lease agreement on March 1, 2015. Exhibit 1.

The Defendant evicted the Plaintiff based on drug related activity within the apartment unit which is in violation of his lease agreement. According to the New Haven Police report, on October 7, 2015, an undercover officer of New Haven Police's Narcotics Enforcement Unit purchased four oxycodone pills from the Plaintiff, Charles Britt. Exhibit 2. The police report states that the sale was made inside of Mr. Britt's apartment unit located within Elm City Communities. Exhibit 2. The Plaintiff was subsequently arrested.

The Defendant sent the Plaintiff a pre-termination notice on December 1, 2015. Exhibit 3. The pre-termination notice states that the Plaintiff was in breach of the lease as a result of his November 16, 2015 arrest. The notice further states that the Defendant was terminating the lease in accordance with Connecticut General Statutes §§ 47a-11; 47a-32; and 47a-15(c)-(d) as the Plaintiff's arrest constituted a nuisance and serious nuisance to the community. Exhibit 3. The Plaintiff failed to request a grievance hearing within the fifteen days provided for in the pre-termination notice. See Affidavit of Gary Hogan, Exhibit 4.

The Defendant served a notice to quit via abode service on January 9, 2016. Exhibit 5. The Plaintiff failed to vacate the property by January 14, 2016 resulting in the Defendant filing a summary process action in the New Haven Housing Court. Exhibit 6. The Plaintiff failed to file

an appearance in the housing court matter and was defaulted for failing to appear. Exhibit 7. An execution was signed by the Housing Court clerk on March 2, 2016. Exhibit 8. At no time during the eviction process did the Plaintiff attempt to defend the eviction. Exhibit 4.

On April 8, 2016, the Plaintiff wrote a letter to the Defendant inquiring about the eviction and his personal possessions. Exhibit 9. The Plaintiff claimed that he was incarcerated since December 21, 2015. Id. The letter bizarrely claims that the Plaintiff should not be evicted for his failure to pay rent as he was incarcerated and therefore could not earn income. Id. The pre-termination notice and the notice to quit did not list failure to pay rent as a reason for the eviction. Exhibit 3.

The Plaintiff sets forth several theories as to how his constitutional rights were violated. Am. Complaint. First, the Plaintiff claims that the Defendant failed to properly serve him with a notice to quit. Second, the Plaintiff alleges that the Defendant breached the lease agreement by evicting him based on criminal allegations as opposed to a criminal conviction. Third, the Plaintiff alleges that he was wrongfully locked out of his unit based on false accusations of him selling drugs from his apartment. As will be set forth below, the Plaintiff's constitutional rights were not violated in any way. The Defendant followed all proper federal and state procedures regarding the eviction. Therefore, the Defendant is entitled to summary judgment as a matter of law.

## II. Standard of Law

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991); *see also* Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

When a motion for summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. Westry v. Stamford Bd. of Educ., No. 3:17-CV-640 (SRU), 2018 WL 4054881 (D. Conn. Aug. 24, 2018); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). If the nonmoving party submits evidence that is "merely

4

colorable", or is not "significantly probative", summary judgment may be granted. Anderson, 477 U.S. at 249–50. If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex, 477 U.S. at 322.

**III.    Argument**

The Defendant properly followed the summary process procedure in the underlying eviction. First, the Defendant's termination of the lease and summary process action were substantively proper as Mr. Britt's criminal arrest constituted a nuisance and serious nuisance to the community in accordance with Connecticut General Statutes § 47a-15. Furthermore, Mr. Britt's arrest fell within the "one strike eviction policy" mandated by Congress in the Anti–Drug Abuse Act of 1988. Second, the summary process action was procedurally proper as Mr. Britt was served the notice to quit in accordance with Connecticut General Statutes § 52-57 and he was mailed a pre-termination notice in accordance with federal law.

   a. The eviction was substantively proper as Mr. Britt's arrest was in violation of the lease agreement.

With drug dealers "increasingly imposing a reign of terror on public and other federally assisted low-income housing tenants," Congress passed the Anti–Drug Abuse Act of 1988. Dep't of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 127 (2002). The Act, as later amended,

provides that each public housing agency shall utilize leases which provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, shall be cause for termination of tenancy. 42 U.S.C. § 1437d; *see also* <u>Dep't of Hous. & Urban Dev. v. Rucker</u>, 535 U.S. 125 (2002). The Act requires housing authorities to issue leases with the condition that tenants are subject to eviction if they engage in any drug related activity either knowingly or unknowingly. This strict rule came to be known as the "one strike eviction policy." *See* Jim Moye, *Can't Stop the Hustle: The Department of Housing and Urban Development's "One Strike" Eviction Policy Fails to Get Drugs Out of America's Projects*, 23 Boston College Third World L.J. 275 (2003) (discussing the public housing policy implications and legislative history behind Congress' Anti–Drug Abuse Act of 1988) attached hereto as <u>Exhibit 10</u>. The legislative history reveals that Congress intended to bestow upon local housing authorities the ability and discretion to evict those engaged in or associated with drug related activity as a way to combat rampant drug use and safety hazards within said communities. <u>Id</u>. at 281.

  The Act goes so far as to allow housing authorities to evict tenants whose family members are engaged in drug activity within the housing authority despite the tenant having no knowledge of the illegal behavior. <u>Id</u>.; *see also* <u>Rucker</u>, 535 U.S. 125. In <u>Rucker</u>, one of the

6

plaintiffs was evicted from public housing when her daughter was found with crack cocaine and a crack cocaine pipe three blocks away from the housing authority unit. The Supreme Court held that eviction was proper as the Anti–Drug Abuse Act of 1988 required housing authorities to have a lease provision mandating eviction in the event drug related activities occurred. Id. The Supreme Court found that the tenants' due process rights were not violated even though they had no knowledge of the suspected criminal activities done by their guests. Id. While this policy may seem harsh, it was designed and intended to reduce dangerous and illegal activity within public housing facilities. *See* legislative history cited within Exhibit 10.

In furtherance of the Anti–Drug Abuse Act of 1988, the Connecticut legislature enacted Connecticut General Statutes Section 47a-15. Section 47a–15 provides that a landlord can evict a tenant "based on ... conduct by the tenant which constitutes a serious nuisance." In 1997, Section 47a–15 was amended to include a provision expanding the definition of serious nuisance to include the following: "in the case of a housing authority, using any area within fifteen hundred feet of any housing authority property in which the tenant resides for the illegal sale of drugs." Public Acts 1997, No. 97–231, § 2. These laws create a zero tolerance policy for housing authorities.

The Plaintiff's Amended Complaint claims that he was not selling drugs out of his apartment unit and that the Defendant wrongfully terminated his lease based on unfounded

7

criminal accusations. The Plaintiff further claims that the eviction was "premature" as the Defendant should have waited until the criminal proceeding was complete prior to making a determination that the Plaintiff was in violation of his lease. The Plaintiff argues that he should not have been evicted as his arrest was not in violation of the lease as he had not yet been convicted of a crime. In other words, the Plaintiff argues that his apartment should have sat vacant waiting for his criminal proceeding to conclude before the Defendant was entitled to evict him and allow a new tenant access to the unit.

The Plaintiff is incorrect in claiming that he must be convicted of a crime prior to the housing authority commencing an eviction. The Connecticut Appellate Court held in 2011 that Connecticut General Statutes Section 47a-15 does not permit a defense that a defendant tenant can "cure a breach of lease and, thus, avoid eviction when the conduct constituting the breach is drug related criminal activity." Hous. Auth. of City of Norwalk v. Brown, 129 Conn. App. 313, 318 (2011). In Brown, the defendant tenant's guest was arrested and subsequently convicted for drug related activity that occurred on the Housing Authority's property. Id. The defendant tenant argued that the guest's conviction cured her breach of the lease as the guest could no longer engage in drug related activity given his incarceration. Id. The Appellate Court determined that the defendant tenant could not claim that she was able to cure the breach as such a defense is not permitted when the conduct at issue is a drug related activity. Id. The Court further stated that the

defendant tenant was unable to "repair" her lease within the spirit of §47a-15 as, "[t]he hazard of the drug culture would not appear to be susceptible to "repair." Id. at 320.

The holding articulated in Brown can clearly be applied to the present situation. It defies logic that a housing authority should be forced to wait until a defendant tenant is convicted of a crime for which he was arrested prior to commencing a summary process action. As the Appellate Court stated, "[t]he hazard of the drug culture would not appear to be susceptible to "repair." Id. at 320. Regardless of whether Mr. Britt was arrested or convicted, his actions are clearly entrenched within the drug culture as his apartment was the target of an undercover investigation. *See* Police Report, Exhibit 2.

The Connecticut Appellate Court addressed a summary process action wherein a defendant tenant's minor son was arrested and had not yet been convicted. Hous. Auth. of the City of New Haven v. Martin, 95 Conn. App. 802 (2006). In Martin, the tenant's son was arrested on May 2, 2004 and the pre-termination notice was sent on June 19, 2004. Id. at 804-05. The housing authority alleged that the defendant tenant violated her lease and C.G.S. § 47a-11 and 47a-32 by virtue of her son's actions and arrest which amounted to a nuisance within the community. Id. at 805-06. At no point did the Connecticut Appellate Court conclude that the summary process action was premature as the tenant's son had only been arrested and not

9

convicted of the crime. Thus, it is clear that it is of no consequence whether the defendant tenant was convicted or simply arrested prior to the summary process action.

If Mr. Britt's argument that he must be convicted prior to a pre-termination notice being sent and a summary process action commencing is deemed correct, then needless waste will occur. Housing authorities across the state will have numerous vacant apartments as they will be forced to wait lengthy periods of time for a criminal proceeding to conclude prior to evicting the tenant in violation of a lease provision requiring tenant conduct in conformity with the law. This would violate public policy. Housing authority units are in high demand and low supply. Having units sit vacant for months, or even years, while criminal proceedings slowly crawl through the court system in no way advances the purpose for having such units in existence. Thus, Mr. Britt's position is in clear violation of public policy.

The pre-termination notice sent to Mr. Britt cites Connecticut General Statutes Section 47a-15 as a reason for termination of the lease. Exhibit 3. Elm City Communities cites Mr. Britt's arrest for narcotics sales as a nuisance and serious nuisance within the housing authority community that threatened the health and safety of other tenants. Exhibit 3; Exhibit 5. The mere fact that Mr. Britt's apartment unit was under surveillance by the New Haven Police Department for suspected drug activity is reason enough to find Mr. Britt in violation of the lease agreement and provides cause to terminate the lease in accordance with Section 47a-15. Regardless of

whether Mr. Britt was convicted of the crimes for which he was charged does not obviate the need for the Defendant to find Mr. Britt's conduct and targeted apartment a nuisance to the community.

Therefore, the substantive reasons for the Defendant to find Mr. Britt in violation of the lease agreement were legitimate. The reasons for the eviction were not unlawful as claimed by Mr. Britt in his Amended Complaint. Elm City Communities was under no obligation to wait until the criminal charges were proven against Mr. Britt prior to serving a pre-termination notice and summary process action. The criminal allegations and detailed undercover investigation surrounding Mr. Britt's apartment provided the Defendant with ample reason to find the lease violated by Mr. Britt and to consider the residence a nuisance and serious nuisance to the community at large. Further, Elm City Communities' actions are supported by the zero tolerance policy as articulated in the Anti–Drug Abuse Act of 1988.

b. Mr. Britt was properly served with the notice to quit and the pre-termination notice.

Mr. Britt claims that the Defendant failed to properly serve the pre-termination notice and notice to quit. When a person is a tenant of federally subsidized housing, federal law must be followed in addition to state law regarding a summary process action. Jefferson Garden Associates v. Greene, 202 Conn. 128 (1987). "Under federal law, 42 U.S.C. § 1437d*(l)* and 24

C.F.R. § 966.4*(l)*(3), a landlord is required to issue a pre-termination notice before commencing a summary process action." Hous. Auth. of the City of New Haven v. Martin, 95 Conn. App. 802, 808 (2006).

As evidenced by Exhibit 3, the Defendant mailed the pre-termination notice to Mr. Britt on December 1, 2015 to his home address located at the Defendant's property. According to the letter sent by Mr. Britt to Elm City Communities, he was not incarcerated until December 21, 2015. See Exhibit 9. Therefore, by Mr. Britt's own admission, there was no reason he would not have received the pre-termination notice. Despite the pre-termination notice being mailed to his attention three weeks prior to being incarcerated, Mr. Britt failed to respond to the pre-termination notice or request a grievance hearing. See Affidavit, Exhibit 4.

The Defendant served Mr. Britt with a notice to quit on January 6, 2016 via abode service. Exhibit 5. Service was left at Mr. Britt's apartment unit located at 358 Orange Street, Apartment 616, New Haven, Connecticut 06511. Exhibit 5. Connecticut General Statutes Section 52-57 governs service of process in Connecticut. The relevant portion of the statute reads as follows:

> Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state.

C.G.S. § 52-57(a).

The Connecticut Supreme Court ruled in 2008 that a defendant can have multiple addresses that can qualify as a usual place of abode for purposes of service of process under Connecticut General Statutes Section 52-57. *See* Argent Mortg. Co., LLC v. Huertas, 288 Conn. 568 (2008). In Huertas, the defendant was incarcerated when she was served with a foreclosure lawsuit. Id. Service was made via abode service and left at the defendant's home address despite her incarceration. Id. The defendant argued that she was not properly served with the foreclosure lawsuit as her usual place of abode was the prison. Id. The Supreme Court affirmed the trial court's ruling that a party can have more than one abode for purposes of service. The trial court found that the defendant had two residences during her time of incarceration – one being her normal address and the other being prison. The trial court held that her home address continued being the defendant's usual place of abode during incarceration as the incarceration was temporary and the defendant intended to return to her home upon being released. The Connecticut Supreme Court noted, "our law nevertheless permits service of process either at the inmate's home or at her place of imprisonment." Id. at 577.

In this case, Mr. Britt was properly served with the notice to quit. Service was made pursuant to Connecticut General Statutes Section 52-57 via abode service. As supported by Huertas, Mr. Britt's apartment was his usual place of abode at the time the notice to quit was served despite him being incarcerated at the time. The Defendant was unaware that Mr. Britt was

incarcerated at the time the notice to quit was served and thus could not have served Mr. Britt in prison even if it elected to do so. Exhibit 4. Therefore, the Defendant properly served the notice to quit on Mr. Britt at his apartment and his argument that service was improper is meritless.

Mr. Britt's claim that he was unaware of the eviction proceeding is equally unavailing. He was clearly on actual notice of the forthcoming eviction as he was residing at his apartment when he received the December 1, 2015 pre-termination notice. *See* Exhibit 9.

### IV. Conclusion

The Defendant, Elm City Communities, hereby requests that this Court enter summary judgment. As established above, the Plaintiff was properly served with the notice to quit and the pre-termination notice. It was also within the Defendant's rights to send a pre-termination notice to the Plaintiff and commence a summary process action based upon his arrest.

THE DEFENDANT,

/s/ Donn A. Swift, Esq.
DONN A. SWIFT, ESQ.
LYNCH, TRAUB, KEEFE & ERRANTE, P.C.
52 TRUMBULL STREET, POB 1612
NEW HAVEN, CT 06510
Federal Bar No. ct05274
E-mail: DSwift@LTKE.com
TEL. (203) 787 0275
FAX: (203) 782 0278

14

## CERTIFICATION

This is to certify that the foregoing was e-filed by defendant and served by regular mail on anyone unable to accept electronic filing, on November 1, 2018. Notice of this e-filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

/s/ DONNA SWIFT