

**U.S. Department of Housing and Urban Development**
**Office of Public and Indian Housing**

Public and Indian Housing

| Special Attention of: | Notice PIH 2015-19 |
|---|---|
| Public Housing Agency Directors | |
| Public Housing Hub Offices Directors | Issued: November 2, 2015 |
| Public Housing Field Office Directors | |
| Resident Management Corporations | Expires: This notice remains in effect until |
| All Multifamily Hub Directors | amended, superseded, or rescinded. |
| All Multifamily Program Center Directors | |

**Subject:** Guidance for Public Housing Agencies (PHAs) and Owners of Federally-Assisted Housing on Excluding the Use of Arrest Records in Housing Decisions

### 1. Background

For the past five years HUD has been an active member of the Federal Interagency Reentry Council. This Council, made up of more than 23 Federal Agencies, meets on a regular basis to act on issues that affect the lives of those released from incarceration. An important aspect of the Reentry Council's work has been to have each Federal Agency identify and address "collateral consequences" that individuals and their families may face because they or a family member has been incarcerated or has had any involvement with the criminal justice system.[1]

In 2011, former HUD Secretary Shaun Donovan issued a letter to public housing authorities (PHAs) across the country emphasizing the importance of providing "second chances" for formerly incarcerated individuals.[2] Secretary Donovan urged PHAs to adopt admission policies that achieve a sensible and effective balance between allowing individuals with a criminal record to access HUD-subsidized housing and ensuring the safety of all residents of such housing. A year later, Secretary Donovan encouraged owners of HUD-assisted multifamily properties ("owners") to do the same and reiterated HUD's goal of "helping ex-offenders gain access to one of the most fundamental building blocks of a stable life – a place to live." HUD has also previously stressed the troubling relationship between housing barriers for individuals with criminal records and homelessness, stating that "the difficulties in reintegrating into the community increase the risk of homelessness for released prisoners, and homelessness in turn

---

[1] For more information on the initiatives of the Council members, see https://csgjusticecenter.org/nrrc/projects/firc/snapshots/.

[2] Letter from Shaun Donovan, Secretary, United States Department of Housing and Urban Development, to Public Housing Authority Executive Directors (June 17, 2011), available at
http://usich.gov/resources/uploads/asset_library/Rentry_letter_from_Donovan_to_PHAs_6-17-11.pdf.

increases the risk of subsequent re-incarceration."[3]

At a time when an estimated 100 million (or nearly one in three) Americans have some type of criminal record,[4] HUD remains committed to the goal of providing second chances to formerly incarcerated individuals where appropriate and to ensuring that individuals are not denied access to HUD-subsidized housing on the basis of inaccurate, incomplete, or otherwise unreliable evidence of past criminal conduct. With those aims, and in response to requests from housing providers and prospective tenants for guidance from HUD regarding the proper use of criminal records in housing decisions, HUD is issuing this notice.

## 2. Purpose

The purpose of this Notice is to inform PHAs and owners of other federally-assisted housing that arrest records may not be the basis for denying admission, terminating assistance or evicting tenants, to remind PHAs and owners that HUD does not require their adoption of "One Strike" policies, and to remind them of their obligation to safeguard the due process rights of applicants and tenants.

The Notice also reminds PHAs and owners of their obligation to ensure that any admissions and occupancy requirements they impose comply with applicable civil rights requirements contained in the Fair Housing Act, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, and Titles II and III of the Americans with Disabilities Act of 1990, and the other equal opportunity provisions listed in 24 CFR 5.105.

Finally, the Notice provides best practices and peer examples for PHAs and owners to review.

## 3. HUD Does Not Require PHAs and Owners to Adopt "One Strike" Policies

HUD does not require that PHAs and owners adopt or enforce so-called "one-strike" rules that deny admission to anyone with a criminal record or that require automatic eviction any time a household member engages in criminal activity in violation of their lease. Instead, in most cases, PHAs and owners have discretion to decide whether or not to deny admission to an applicant with certain types of criminal history, or terminate assistance or evict a household if a tenant, household member, or guest engages in certain drug-related or certain other criminal activity on or off the premises (in the case of public housing) or on or near the premises (in the case of Section 8 programs).[5]

---

[3] Guidance on Housing Individuals and Families Experiencing Homelessness Though the Public Housing and Housing Choice Voucher Programs, HUD PIH Notice 2013-15 (HA), 8 (June 10, 2013), available at http://1.usa.gov/1afx3VY.

[4] Bureau of Justice Statistics, U.S. Dep't of Justice, *Survey of State Criminal History Information Systems*, 2012, 3 (Jan. 2014), available at https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf.

[5] HUD regulations outline the limited instances where denial of admission or termination of assistance is required in the public housing, Housing Choice Voucher and Section 8 multifamily programs. See 24 CFR Part 5, subpart I; Part 960, subpart B; Part 966, subpart A; Part 982, subpart L.

In deciding whether to exercise their discretion to admit or retain an individual or household that has engaged in criminal activity, PHAs and owners may consider all of the circumstances relevant to the particular admission or eviction decision, including but not limited to: the seriousness of the offending action; the effect that eviction of the entire household would have on family members not involved in the criminal activity; and the extent to which the leaseholder has taken all reasonable steps to prevent or mitigate the criminal activity. Additionally, when specifically considering whether to deny admission or terminate assistance or tenancy for illegal drug use by a household member who is no longer engaged in such activity, a PHA or owner may consider whether the household member is participating in or has successfully completed a drug rehabilitation program, or has otherwise been rehabilitated successfully.[6]

### 4. An Arrest is Not Evidence of Criminal Activity that Can Support an Adverse Admission, Termination, or Eviction Decision

Subject to limitations imposed by the Fair Housing Act and other civil rights requirements,[7] PHAs and owners generally retain broad discretion in setting admission, termination of assistance, and eviction policies for their programs and properties. Even so, such policies must ensure that adverse housing decisions based upon criminal activity are supported by sufficient evidence that the individual engaged in such activity. Specifically, before a PHA or owner denies admission to, terminates the assistance of, or evicts an individual or household on the basis of criminal activity by a household member or guest, the PHA or owner must determine that the relevant individual engaged in such activity.

HUD has reviewed relevant case law and determined that the fact that an individual was arrested is not evidence that he or she has engaged in criminal activity. Accordingly, the fact that there has been an arrest for a crime is not a basis for the requisite determination that the relevant individual engaged in criminal activity warranting denial of admission, termination of assistance, or eviction.

An arrest shows nothing more than that someone probably suspected the person apprehended of an offense. In many cases, arrests do not result in criminal charges, and even where they do, such charges can be and often are dismissed or the person is not convicted of the crime alleged. In fact, in the 75 largest counties in the country, approximately one-third of felony arrests did not result in conviction, with about one-quarter of all cases ending in dismissal.[8]

Moreover, arrest records are often inaccurate or incomplete (e.g., by failing to indicate whether

---

[6] See 24 CFR 5.852, 960.203(d), 966.4(l)(5)(vii), 982.310(h) (describing PHA and owner discretion in screening and evictions actions related to criminal activity).

[7] See 24 CFR 5.852(e) ("admission and eviction decisions must be consistent with fair housing and equal opportunity provisions of [24 CFR 5.105]"); see also 24 CFR 960.202(c)(3), 966.6(l)(vii)(F), 982.310(h)(4), 982.552(c)(2)(v).

[8] Brian A. Reaves, Bureau of Justice Statistics, U.S. Dep't of Justice, Felony Defendants in Large Urban Counties, 2009, at 22, Table 21 (2013), http://www.bjs.gov/content/pub/pdf/fdluc09.pdf.

4

the individual was prosecuted, convicted, or acquitted), such that reliance on arrests not resulting in conviction as the basis for denying applicants or terminating the assistance or tenancy of a household or household member may result in unwarranted denials of admission to or eviction from federally subsidized housing.[9]

With respect to the Section 8 tenant-based and moderate rehabilitation programs, HUD regulations specifically provide that termination of assistance for criminal activity must be based on a "preponderance of the evidence" that the tenant, or other household member, or guest engaged in such activity. For public housing as well, applicants or tenants may not be denied admission or evicted based on mere suspicion that they, a household member, or guest has engaged in criminal activity. Where PHAs or owners seek eviction, they should be prepared to persuade a court that the eviction is justified based on sufficient evidence of criminal activity in violation of the lease.

For these reasons, a PHA or owner may not base a determination that an applicant or household engaged in criminal activity warranting denial of admission, termination of assistance, or eviction on a record of arrest(s).

Although a record of arrest(s) may not be used to deny a housing opportunity, PHAs and owners may make an adverse housing decision based on the conduct underlying an arrest if the conduct indicates that the individual is not suitable for tenancy and the PHA or owner has sufficient evidence other than the fact of arrest that the individual engaged in the conduct. The conduct, not the arrest, is what is relevant for admissions and tenancy decisions.

An arrest record can trigger an inquiry into whether there is sufficient evidence for a PHA or owner to determine that a person engaged in disqualifying criminal activity, but is not itself evidence on which to base a determination. PHAs and owners can utilize other evidence, such as police reports detailing the circumstances of the arrest, witness statements, and other relevant documentation to assist them in making a determination that disqualifying conduct occurred. Reliable evidence of a conviction for criminal conduct that would disqualify an individual for tenancy may also be the basis for determining that the disqualifying conduct in fact occurred.

### 5. Protecting the Due Process Rights of Applicants and Tenants

Federal law requires that PHAs provide public housing, project-based Section 8, and Section 8 HCV applicants with notification and the opportunity to dispute the accuracy and relevance of a criminal record *before* admission or assistance is denied on the basis of such record. Public housing and Section 8 applicants also must be afforded the right to request an informal hearing

---

[9] See, e.g., U.S. Dep't of Justice, *The Attorney General's Report on Criminal History Background Checks* at 3, 17 (June 2006), http://www.justice.gov/olp/ag_bgchecks_report.pdf (reporting that the FBI's Interstate Identification Index system, which is the national system designed to provide automated criminal history record information and "the most comprehensive single source of criminal history information in the United States," is "still missing final disposition information for approximately 50 percent of its records").

or review *after* an application for housing assistance is denied.

As with admissions decisions, federal law requires that PHAs provide public housing, project-based Section 8, and Section 8 HCV tenants with notice and the opportunity to dispute the accuracy and relevance of a criminal record before they evict or terminate the tenant's assistance on the basis of such record. Moreover, PHAs and owners may only terminate the tenancy or assistance of a public housing or project-based Section 8 tenant through either a judicial action in state or local court, or, in the case of a Section 8 HCV participant, through an administrative grievance hearing before an impartial hearing officer appointed by the PHA. In either case, the tenant must be afforded the basic elements of due process, including the right to be represented by counsel, to question witnesses, and to refute any evidence presented by the PHA or owner.

### 6. Civil Rights Requirements and Consistent Application of Procedures and Standards

PHAs and owners must ensure that any screening, eviction, or termination of assistance policies and procedures comply with all applicable civil rights requirements contained in in the Fair Housing Act, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, and Titles II and III of the Americans with Disabilities Act of 1990, and the other equal opportunity provisions listed in 24 CFR 5.105. To that end, a PHA or owner should institute protocols that assure that its procedures and standards are consistently applied and that decisions are made based on accurate information. Inconsistent application of standards or decisions based on partial or inaccurate information may result in liability under federal civil rights laws. See, e.g., Allen v. Muriello, 217 F. 3rd 517 (7th Cir. 2000) (allegation that African American applicant for federal housing assistance was given less opportunity to contest erroneous record of criminal activity than two similarly situated white applicants established a prima facie case of discrimination under the Fair Housing Act).

### 7. Best Practices and Peer Examples

PHAs and owners are encouraged to adopt admissions and continuing occupancy policies based on the best practices highlighted below to guard against unwarranted denial of assistance, termination from program participation, or eviction from federally assisted housing. These best practices incorporate clear standards for using information about criminal history in an admission or continuing participation decision. PHAs and owners are also encouraged to read the Shriver Report entitled "When Discretion Means Denial: A National Perspective on Criminal Records Barriers to Federally Subsidized Housing."

*Examples of PHA Best Practices on the Use of Criminal Records*

A.      Many PHAs have adopted written admission policies that limit their criminal record screening to assessments of conviction records.

*Examples of PHA Best Practices on Screening for Criminal Activity*

6

A.     Some PHAs allow public housing and Housing Choice Voucher applicants to address and present mitigating circumstances regarding criminal backgrounds prior to admission decisions. In some cases, doing so has produced cost savings due to fewer decision appeals.

B.     Some PHAs have adopted lookback periods that limit what criminal conduct is considered during the screening process based on when the conduct occurred and/or the type of conduct. For example, when screening HCV applicants, one PHA has adopted a twelve-month lookback period for drug-related criminal activity and a twenty-four month lookback period for violent and other criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents.

C.     Some PHAs have adopted admission policies that enumerate the specific factors that will be considered when the PHA evaluates an individual's criminal record, including:
     a.  Whether the applicant's offense bears a relationship to the safety and security of other residents;
     b.  The level of violence, if any, of the offense for which the applicant was convicted;
     c.  Length of time since the conviction;
     d.  The number of convictions that appear on the applicant's criminal history;
     e.  If the applicant is now in recovery for an addiction, whether the applicant was under the influence of alcohol or illegal drugs at the time of the offense; and
     f.  Any rehabilitation efforts that the applicant has undertaken since the time of conviction.

D.     Some PHAs have implemented pilot programs that allow formerly incarcerated persons who have been released from prison within the past two or three years to be added to an existing voucher of a family member if all involved agree to participate and the formerly incarcerated individual agrees to six months to one year of supportive services with nonprofit partners.

E.     One PHA has hired an offender reentry housing specialist who collaborates with a formerly incarcerated individual's parole officer, landlord, and treatment provider to ensure successful reentry into the community.

*Example of PHA Best Practices on Evicting and Terminating Assistance for Criminal Activity*

A.     Some PHAs have adopted policies that list the circumstances that will be considered prior to a termination of the lease on the basis of criminal activity, including:
     a.  The seriousness of the offending action, especially with respect to how it would affect other residents;
     b.  The extent of participation or culpability of the leaseholder, or other household members, in the offending action, including whether the culpable member is a minor, a person with disabilities, or a victim of domestic violence, dating violence, sexual assault, or stalking;
     c.  The effects that the eviction will have on other family members who were not involved in the action or failure to act;

d. The effect on the community of the termination, or of the PHA's failure to terminate the tenancy;
e. The effect of the PHA's decision on the integrity of the public housing program;
f. The demand for housing by eligible families who will adhere to lease responsibilities;
g. The extent to which the leaseholder has shown personal responsibility and whether they have taken all reasonable steps to prevent or mitigate the offending action; and
h. The length of time since the violation occurred, the family's recent history, and the likelihood of favorable conduct in the future.

## 8. Paperwork Reduction Act

The information collection requirements contained in this Notice were approved by the Office of Management and Budget (OMB) in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C 3501-3520). Compliance and Enforcement are covered by OMB controls numbers 2502-0205, 2577-0232, 2577-0220, 2577-0230, and 2577 - 0169. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid control number.

## 9. Contact Information

If you have questions regarding this Notice, please contact your local HUD Field Office.


/s/
Lourdes Castro Ramirez
Principal Deputy Assistant Secretary for
Public and Indian Housing


/s/
Edward Golding
Principal Deputy Assistant Secretary for
Housing