| | | |
|---|---|---|
| CHARLES LAMONT BRITT,<br>    Plaintiff, | ┆ | CIVIL ACTION NO.<br>3:17-cv-02159 (JCH) |
| v. | ┆ | |
| ELM CITY COMMUNITIES,<br>    Defendant. | ┆ | JUNE 11, 2019 |

### RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 40) & CROSS MOTION FOR SUMMARY JUDGMENT (DOC. NO. 55)

## I.  INTRODUCTION

Plaintiff Charles Lamont Britt ("Britt") filed this action pro se against his former landlord, Elm City Communities ("Elm City"), in connection with his eviction from a public housing unit.[1]  See generally Complaint ("Compl.") (Doc. No. 1).  Construed liberally, Britt's Amended Complaint (Doc. No. 33-1) asserts (1) a Due Process claim pursuant to section 1983 of title 42 of the United States Code, and (2) a state law claim for defamation.[2]  The parties now cross-move for summary judgment.  See generally

---

[1] Elm City Communities is also known as the Housing Authority of New Haven.  See Defendant's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1") (Doc. No. 42) at ¶ 24.

[2] On October 16, 2018, the court granted in part and denied in part Britt's Motion to Amend (Doc. No. 33) his original Complaint.  See Order (Doc. No. 37).  Specifically, the court denied the Motion to the extent that Britt's proposed Amended Complaint (Doc. No. 33-1) sought to add a second defendant landlord.  Id.  Subsequently, Britt docketed a second Amended Complaint (Doc. No. 38), without seeking leave from the court to amend.

The court treats the first Amended Complaint that Britt attached to his Motion to Amend as the operative complaint in this action, subject to the court's October 16 Order.  The court notes, however, that Britt's second proposed Amended Complaint appears to be to identical to his first proposed Amended Complaint.

Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 40); Cross Motion for Summary Judgment ("Pl.'s Mot.") (Doc. No. 55).

For the reasons that follow, both Motions are denied.

## II. BACKGROUND[3]

On March 2, 2015, Britt entered into a lease agreement (the "Lease") with Elm City for a public housing unit located at 358 Orange Street, New Haven, Connecticut 06511 (the "Apartment"). Defendant's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1") (Doc. No. 42) at ¶¶ 1-4. The Lease required Britt to, inter alia, refrain from engaging in drug-related criminal activity or other criminal activity that threatens the health, safety, and right to peaceful enjoyment of other residents. Id. at ¶ 6.

On November 16, 2015, Britt was arrested and charged with selling narcotics out of the Apartment. Id. at ¶ 11. Britt posted bail on the same day of his arrest. Affidavit of Charles Lamont Britt ("Pl.'s Aff.") (Doc. No. 55-2) at ¶ 5. He continued to live at the Apartment until December 21, 2015, when he was arrested in Pennsylvania on different

---

[3] Although Elm City filed a Notice to Self-Represented Litigant (Doc. No. 39) outlining the procedure for responding to a motion for summary judgment, Britt has not complied with the requirements of Local Rule 56 of the Local Rules of Civil Procedure. In particular, Britt has not filed a Local Rule 56(a)2 Statement in response to Elm City's Local Rule 56(a)1 Statement of Undisputed Facts. He also has not filed a Local Rule 56(a)1 Statement in support of his own Cross Motion for Summary Judgment.

However, even when a party fails to submit a response to a summary judgment motion, a court "may in its discretion opt to conduct an assiduous review of the record[.]" Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted). Indeed, at a minimum, the court must assure itself that the evidence submitted in support of the summary judgment motion meets the movant's burden of production. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.") (internal quotation marks omitted, emphasis in original).

This court will therefore deem Elm City's Local Rule 56(a)1 Statement of Undisputed Facts admitted to the extent that it is supported by admissible evidence and to the extent that it is not contradicted by the admissible evidence contained in Britt's Cross Motion for Summary Judgment.

charges.  Id. at ¶ 6.  Britt was incarcerated in Pennsylvania between December 21, 2015, and June 2, 2016.  Id.

Following Britt's arrest on November 16, 2015, Elm City took steps to terminate the Lease and evict Britt from the Apartment pursuant to Connecticut's summary process statute.[4]  Specifically, Elm City claims that its attorney mailed a Pre-Termination Notice to the Apartment on December 1, 2015.[5]  Def.'s L.R. 56(a)1 at ¶ 12.  This Notice stated that Britt was in violation of his Lease because his Apartment had become "the target of an ongoing investigation regarding drug sales" and because Britt had been arrested on charges of selling narcotics out of the Apartment.  Exhibit 3 ("Ex. 3") (Doc. No. 41-3) at 2-3.  The Pre-Termination Notice provided Britt with a 15-day period for requesting "a grievance hearing before an impartial person or panel," although it also noted that Elm City could "decline to afford [Britt] a grievance hearing" because Britt's alleged violation of the Lease involved criminal activity.  Id. at 5.  Finally, the Notice

---

[4] Typically, a summary process action in Connecticut involves three steps.  First, "before a landlord may proceed with a summary process action, . . . the landlord must [ ] deliver a notice to the tenant specifying the alleged violations and offering the tenant a fifteen day period to remedy."  St. Paul's Flax Hill Co-op. v. Johnson, 124 Conn. App. 728, 734 (2010).  "The legislative purpose of a pretermination [notice] is to discourage summary evictions against first offenders."  Hous. Auth. of Town of Greenwich v. Rodriguez, 178 Conn. App. 120, 126 (2017) (internal quotation marks and alterations omitted).  Next, a landlord may proceed to serve a notice to quit possession.  See St. Paul's Flax Hill Co-op., 124 Conn. App. at 735-36 (noting that the notice to quit must be delivered after service of the pretermination notice).  This notice "typically [constitutes] an unequivocal act terminating a lease agreement with a tenant."  Id. at 735.  Once the notice to quit has been delivered to the tenant, the landlord may file a summary process action in a state court by serving the tenant with a copy of the summary process complaint and summons.  See Waterbury Twin, LLC, v. Renal Treatment Centers-Ne., Inc., 292 Conn. 459, 466 (2009) ("Service of a valid notice to quit . . . is a condition precedent to a summary process action under § 47a-23 that implicates the trial court's subject matter jurisdiction over that action.") (internal quotation marks and citations omitted).  Once a summary process action has been filed, the state court will typically hold a trial to determine whether eviction of the tenant is warranted.  See Hous. Auth. of Town of Wethersfield v. Wasylkiw, No. SP-H8011-8366, 1981 WL 164261, at *2 (Conn. Super. Ct. Apr. 27, 1981) ("Only after a full trial will a determination be made by a judge on whether or not [a tenant] may be evicted.").

[5] This fact is contested, as discussed below.  See, infra, at 9-11.

advised that, if Britt did not request a grievance hearing, or if the grievance hearing was resolved against Britt, "an immediate action to recover possession of the premises may be commenced by [Elm City]." Id.

Elm City did not receive a grievance hearing request from Britt within the 15-day period. Def.'s L.R. 56(a)1 at ¶ 16. On January 9, 2016, a State Marshall attempted to serve Britt with a Notice to Quit via abode service by leaving a copy of the Notice at the Apartment. Id. at ¶ 17. The Notice to Quit directed Britt to move out of the Apartment by January 14, 2016, and it warned that, if Britt failed to do so, "an eviction (summary process case) may be started against [him]." Ex. 5 (Doc. No. 41-5) at 2-3.

Elm City subsequently filed a summary process action against Britt in the New Haven Housing Court (the "Housing Court") with a return date of February 6, 2016. Def.'s L.R. 56(a)1 at ¶ 18. Britt failed to appear in the summary process action, and the Housing Court issued a summary process execution for possession of the Apartment on March 2, 2016. Id. at ¶¶ 19, 20.

## III.    STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." <u>LaFond v. Gen. Physics Servs. Corp.</u>, 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." <u>F.D.I.C. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010) (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. <u>Cortes v. MTA N.Y. City Transit</u>, 802 F.3d 226, 230 (2d Cir. 2015) (quoting <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997)).

## IV.    DISCUSSION

Elm City only moves for summary judgment as to Britt's Due Process claim, making no mention in its motion papers of Britt's state law defamation claim. <u>See generally</u> Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 41). Elm City argues that there is no issue of material fact as to whether Britt received constitutionally adequate notice of the eviction proceedings. <u>See id.</u> at 3.

In Britt's Cross Motion for Summary Judgment, Britt argues that he was never notified of the summary process action and that the court should therefore enter summary judgment in his favor on the Due Process claim. <u>See</u> Memorandum of Law in Support of Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 55-

1) at 4-5, 8. In addition, Britt appears to argue that he is entitled to summary judgment on the state law defamation claim because Elm City did not move for summary judgment on that claim.[6] See id. at 7-8.

A. Due Process Claim

Elm City argues that it provided Britt with constitutionally adequate notice by (1) mailing the Pre-Termination Notice to the Apartment, (2) delivering a copy of the Notice to Quit to the Apartment, and (3) delivering a copy of the summary process complaint and summons to the Apartment. See Def.'s Mem. at 11-14; see also Objection/Reply to Plaintiff's Cross Motion for Summary Judgment ("Def.'s Opp'n") (Doc. No. 56) at 4-7. Britt argues that he was denied Due Process because he never actually received these documents. See Pl.'s Aff. at ¶ 18.

It is well established that the government cannot deprive public housing tenants of their continued tenancy without due process of law. See Escalera v. New York City Hous. Auth., 425 F.2d 853, 861 (2d Cir. 1970) ("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be deemed to be a privilege."). Under the Due Process Clause, "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." Dusenbery v. United States, 534 U.S. 161, 167 (2002) (internal quotation marks omitted). "Due process does not require that a property owner

---

[6] In his Cross Motion for Summary Judgment, Britt alternates between (1) asserting that there remain issues of material fact that should go to the jury, and (2) claiming that he is entitled to summary judgment as a matter of law. See, e.g., Pl.'s Mem. at 1, 8. Construing Britt's pro se submissions "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted, emphasis in original), the court will consider not only whether issues of fact preclude granting Elm City's Motion for Summary Judgment, but whether summary judgment in Britt's favor is warranted as a matter of law.

receive actual notice before the government may take his property." <u>Jones v. Flowers</u>, 547 U.S. 220, 226 (2006). Instead, the government need only "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity present their objections." <u>Id.</u> (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Greene v. Lindsey</u>, 456 U.S. 444, 445, 450-51 (1982) (applying this standard to evaluate whether public housing tenants were given constitutionally adequate notice before being evicted). "Reasonably calculated notice is notice by means such as one desirous of actually informing the property owner might reasonably adopt to accomplish it." <u>Akey v. Clinton Cty., N.Y.</u>, 375 F.3d 231, 235 (2d Cir. 2004) (internal quotation marks and alterations omitted). Generally, "notice by mail is deemed to be reasonably calculated to reach property owners, . . . despite the slight risk that notice sent by ordinary mail might not be received." <u>Id.</u>

In this case, Elm City has not established as a matter of law that it provided Britt with constitutionally adequate notice of the eviction proceedings.[7] To begin, Elm City does not provide proof of abode service of the summary process complaint and summons, such as an affidavit of the server testifying that he delivered these documents to the Apartment. Admittedly, the record does show that the Housing Court ultimately issued a summary process execution for possession of the Apartment,

---

[7] Indeed, it is unclear whether counsel for Elm City understood what it needed to show in order to prevail on its Motion for Summary Judgment. Even though Britt's Due Process claim concerns whether Elm City's method of notice satisfied the constitutional standards of Due Process, Elm City's motion papers focus solely on (1) whether its decision to terminate the Lease was substantively correct, and (2) whether it complied with the statutory requirements for bringing a summary process action. However, as the caselaw on Due Process makes abundantly clear, compliance with statutory notice requirements under state or federal law does not necessarily imply compliance with the constitutional notice requirements under the Due Process Clause. <u>See</u>, <u>e.g.</u>, <u>Greene v. Lindsey</u>, 456 U.S. 444, 445, 456 (1982) (concluding that Kentucky's service procedure for eviction actions failed to afford tenants in a public housing project the notice required by the Due Process Clause of the Fourteenth Amendment).

presumably after assuring itself that there was adequate proof of service of the summary process complaint and summons.  See Exhibit 8 ("Ex. 8") (Doc. No. 41-8). Nevertheless, resolving all ambiguities in favor of Britt and drawing all inferences against Elm City, a reasonable juror could find in the absence of any direct proof of service that the summary process complaint and summons were not delivered to the Apartment.[8]

Nor is summary judgment warranted on the basis of the Notice to Quit.  Even though Elm City provided an affidavit of service testifying that this Notice was delivered to the Apartment, see Exhibit 5 ("Ex. 5") (Doc. No. 41-5) at 5, the Notice did not advise Britt of the availability of a procedure for challenging the termination of his Lease. Instead, the Notice to Quit simply directed Britt to vacate the Apartment under the threat of future legal action.  See id. at 2-3.  It therefore cannot satisfy the notice requirements of Due Process because it was "not reasonably calculated to inform [Britt] of the availability of an opportunity to present [his] objections[.]"  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13-15 (1978) (concluding that, while the petitioners' notice was "adequate to apprise the [utility customers] of the threat of termination of service," it did not provide constitutionally adequate notice because it did "not advise the customer of

---

[8] Elm City does not request that this court take judicial notice of any affidavits of service that might have been filed on the state court docket for the summary process action against Britt.  The court declines to do so sua sponte.  While a court "may take judicial notice on its own," it is not required to take judicial notice unless "a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c); see also McPhatter v. M. Callahan & Assocs., LLC, No. 11 CV 5321 NGG LB, 2013 WL 3981106, at *1 n.1 (E.D.N.Y. Aug. 2, 2013) ("[T]he Court may take judicial notice on its own, but is not required to take judicial notice sua sponte.") (emphasis in original), report and recommendation adopted, No. 11-CV-05321 NGG LB, 2013 WL 5209926 (E.D.N.Y. Sept. 13, 2013).

the availability of a procedure for protesting a proposed termination of utility service as unjustified").

Finally, assuming <u>arguendo</u> that the Pre-Termination Notice contained information sufficient to apprise Britt of the procedures for objecting to his eviction, there remains an issue of fact as to whether Elm City actually mailed this Notice to the Apartment. There are many ways for a party to establish proof of mailing, including, <u>inter alia</u>, by offering testimony of the sender or by providing evidence that it was the party's regular practice and procedure to mail the contested document. <u>See</u> <u>Meckel v. Cont'l Res. Co.</u>, 758 F.2d 811, 814 (2d Cir. 1985) ("Proof of mailing of the notice is established by the affidavit of a Citibank employee who caused the notice to be mailed, and by the affidavit and deposition of a Citibank manager who testified about the regular procedures Citibank used to mail notices to debenture holders.") (internal quotation marks omitted); <u>Mount Vernon Fire Ins. Co. v. E. Side Renaissance Assocs.</u>, 893 F. Supp. 242, 245 (S.D.N.Y. 1995) ("Proof of mailing may be established either by offering testimony of the person who actually mailed the letter or by showing that it was the regular office practice and procedure to mail such a letter."). Elm City, however, only cites to a copy of the Pre-Termination Notice as support for its assertion that, "[o]n December 1, 2015, [its] attorney mailed [Britt] a Pre-Termination Notice." Def.'s L.R. 56(a)1 at ¶ 12. While the existence of the Pre-Termination Notice may serve as evidence that Elm City drafted this Notice, it is not sufficient to show that Elm City mailed the Notice to the Apartment on December 1, 2015. <u>See</u> <u>Tufano v. Riegel Transp., Inc.</u>, No. CV 03-0977 (JO), 2006 WL 335693, at *3, 4 (E.D.N.Y. Feb. 11, 2006) (finding insufficient proof of mailing where the record contained a copy of the letter in

dispute, but the defendant did not offer testimony of the sender or evidence that the letter was mailed pursuant to regular office practice).

Although Elm City appears to rely solely on the copy of the Pre-Termination Notice to substantiate its claim that it mailed this Notice to the Apartment, the court notes that the record also includes testimony from Gary Hogan ("Hogan"), Elm City's Director of Housing Management, that might be construed as proof of mailing. See generally Exhibit 4 ("Ex. 4") (Doc. No. 41-4). Specifically, Hogan testified in his Affidavit that:

> Elm City Communities received a grievance request from Charles Britt dated August 21, 2017 in response to the pre-termination notice mailed to him on December 1, 2015 which was denied as untimely on September 21, 2017.

Id. at ¶ 7. The court, however, will disregard Hogan's assertion that "the pre-termination notice [was] mailed to [Britt] on December 1, 2015," because that testimony does not comply with the requirements of Rule 56(c) of the Federal Rules of Civil Procedure. Under this Rule, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, nothing in the record suggests that Hogan had personal knowledge of the alleged mailing of the Pre-Termination Notice to Britt's Apartment. Indeed, Hogan acknowledges that "[his] Affidavit is based on information learned from the files for [Britt] and Elm City Communities." Ex. 4 at ¶ 3. Of course, an affiant may make admissible testimony based on their review of business records. See, e.g., Serrano v. Cablevision Sys. Corp., 863 F. Supp. 2d 157, 163-64 (E.D.N.Y. 2012) (concluding that the affiant's testimony was admissible because the testimony was

"based on business records maintained by [the defendant] and reviewed by [the affiant] himself"); OneWest Bank, N.A. v. Guerrero, No. 14-CV-3754 (NSR), 2018 WL 2727891, at *5 (S.D.N.Y. June 6, 2018) (admitting affiant's testimony that the plaintiff mailed a notice of default because the testimony was based on business records that the affiant had reviewed in her official capacity). However, Hogan does not identify, or otherwise describe, the records that formed the basis for his testimony that Elm City mailed the Pre-Termination Notice to the Apartment on December 1, 2015. As a result, the court cannot ascertain whether the relied-upon records actually provide proof of mailing, as opposed to merely containing evidence that Elm City drafted the Pre-Termination Notice. Moreover, even if the unidentified records that Hogan reviewed did constitute proof of mailing, Elm City has not laid a proper foundation for admitting these records under the business record exception to the hearsay rule. See United States v. Komasa, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record.") (internal quotation marks and alterations). Hogan's testimony therefore does not provide a basis for concluding that Elm City mailed the Pre-Termination Notice to the Apartment on December 1, 2015.

As a result, there exist issues of material fact that preclude granting summary judgment to Elm City on Britt's Due Process claim. Moreover, those same issues of fact also preclude summary judgment in favor of Britt. In his Cross Motion for Summary Judgment, Britt appears to argue that he is entitled to summary judgment as a matter of law because he did not receive actual notice of the eviction proceedings. See Pl.'s Aff.

at ¶ 18. As noted above, however, notice by mail is generally deemed to satisfy the notice requirements of the Due Process Clause, notwithstanding a plaintiff's denial of receipt. See, supra, at 7; see also Akey v. Clinton Cty., N.Y., 375 F.3d 231, 235 (2d Cir. 2004) (holding that "[d]enial of receipt, without more, is insufficient to rebut the presumption" that the mailing of a notice to a plaintiff's home address was "reasonably calculated to reach [the plaintiff]"). Although Elm City did not provide evidence sufficient to show as a matter of law that it sent the Pre-Termination Letter and the summary process complaint and summons to the Apartment, a reasonable juror could arrive at such a conclusion based on the evidence that Elm City did submit to this court. Thus, because there remain issues of fact as to whether Elm City actually mailed these documents to the Apartment, Britt is not entitled to summary judgment on his Due Process claim.[9]

   B.   Defamation Claim

Britt argues that he is entitled to summary judgment on his state defamation claim because Elm City did not address this claim in its Motion for Summary Judgment. See at Pl.'s Mem. at 7-8. This argument, however, confuses the burdens of proof on a motion for summary judgment. As the moving party, Britt bears "the initial burden of showing that there is no genuine dispute as to a material fact." See Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018). Thus, "where the movant fails to fulfill its initial burden of

_____

[9] The court notes that Britt's incarceration in Pennsylvania does not, by itself, provide grounds for granting Britt's Cross Motion for Summary Judgment. Although the Supreme Court has held that notice sent to a plaintiff's home address was constitutionally inadequate when the government knew that the plaintiff was in prison, see Jones v. Flowers, 547 U.S. 220, 230 (2006), Britt has not come forward with evidence suggesting that Elm City knew of Britt's incarceration when it brought the summary process action. Indeed, Britt admitted at his Deposition that, between December 2015 and June 2016, he did not contact Elm City or otherwise inform them that he was incarcerated in Pennsylvania. See Deposition of Charles Lamont Britt ("Pl.'s Dep.") (Doc. No. 56-2) at 25.

providing admissible evidence of the material facts entitling it to summary judgment,
summary judgment must be denied, even if no opposing evidentiary matter is
presented, for the non-movant is not required to rebut an insufficient showing."
Giannullo v. City of New York, 322 F.3d 139, 140–41 (2d Cir. 2003) (internal quotation
marks and alterations omitted).  For the reasons that follow, Britt has not satisfied his
initial burden with respect to the state defamation claim.

Under Connecticut law, the general action of "defamation" encompasses both the
common law torts of libel and slander.  See Gleason v. Smolinkski, 319 Conn. 394, 430
n.30 (2015). The difference between the two torts is that "slander is oral defamation,"
whereas "libel is written defamation."  Id. (internal quotations and citation omitted).  All
claims of defamation require a plaintiff to establish that: "(1) the defendant published a
defamatory statement; (2) the defamatory statement identified the plaintiff to a third
person; (3) the defamatory statement was published to a third person; and (4) the
plaintiff's reputation suffered injury as a result of the statement."  Id. at 430 (internal
quotation marks omitted).

In limited circumstances, a plaintiff may be able to argue that he was per se
defamed, thus obviating the need to establish the fourth element of reputational harm.
Id. at 430 n.31.  The modern view of defamation per se is that it generally applies to
situations in which the defamatory statement includes allegations of a "chargeable
offense which is punishable by imprisonment."  Id.  In such situations, "injury to a
plaintiff's reputation is conclusively presumed such that a plaintiff need neither plead nor
prove" the reputational damage that has been suffered as a result of the defamatory
statement.  Id.

In this case, Britt appears to argue that Elm City defamed him by falsely alleging in its Pre-Termination Notice and Notice to Quit that Britt had engaged in criminal activity at the Apartment. <u>See</u> Pl.'s Mem. at 8. Even if the court assumes <u>arguendo</u> that these statements are <u>per se</u> defamatory, summary judgment must be denied because Britt has not come forward with evidence showing that Elm City published these allegations to a third party. In particular, Britt does not identify a third party who received, or was otherwise made aware of, the Pre-Termination Notice or the Notice to Quit.[10] Accordingly, Britt has not shown that he is entitled to summary judgment on his defamation claim as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Elm City's Motion for Summary Judgment (Doc. No. 40) and Britt's Cross Motion for Summary Judgment (Doc. No. 55) are both **DENIED**.

**SO ORDERED**.

Dated this 11th day of June 2019 at New Haven, Connecticut.


__/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

---

[10] To the extent that Britt's motion papers can be construed as arguing that Elm City defamed Britt by filing these two Notices with the Housing Court, that argument is without merit because, in Connecticut, "[i]t is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." <u>Hopkins v. O'Connor</u>, 282 Conn. 821, 830-31 (2007) (internal quotation marks omitted).